**No. 25-40272**

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff–Appellant,*

v.

RAYMOND ANDREW LUNA,
*Defendant–Appellee.*

---

On Appeal from the United States District Court
For the Southern District of Texas
Corpus Christi Division, Case No. 2:23-CR-00518

---

BRIEF OF PLAINTIFF–APPELLANT

---

NICHOLAS J. GANJEI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

KRISTIAN D. AMUNDSEN
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9102

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of FIFTH CIRCUIT R. APP. P. 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. District Judge: Hon. Nelva Gonzalez Ramos.

2. Magistrate Judges: Hon. Jason B. Libby; Hon. Julie K. Hampton.

3. Defendant-Appellee: Raymond Andrew Luna.

4. Plaintiff-Appellant: United States of America.

5. Counsel for Plaintiff-Appellant: United States Attorney Nicholas J. Ganjei; Former United States Attorney Alamdar S. Hamdani; Assistant United States Attorney Ashley Martin; Assistant United States Attorney Carmen Mitchell (on appeal) and Assistant United States Attorney Kristian D. Amundsen (on appeal).

6. Counsel for Defendant-Appellee: Federal Public Defender Philip G. Gallagher; Assistant Federal Public Defender Christopher Jenkins; Assistant Federal Public Defender Kathryn Shephard (on appeal).

s/ *Kristian D. Amundsen*
Kristian D. Amundsen
Assistant United States Attorney
Attorney of record for the United States

## STATEMENT REGARDING ORAL ARGUMENT

Although the facts and legal arguments are adequately presented in the briefs and record, the government invites oral argument should this Court deem it helpful in resolving this appeal. *See* Fed. R. App. P. 34(a)(2).

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ................................. iii

TABLE OF AUTHORITIES ................................................................ vi

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUE ............................................................. 1

STATEMENT OF THE CASE .............................................................. 1

    I.    Course of the Proceeding Below ................................................ 1

    II.    Relevant Factual History ......................................................... 3

        a.    Luna's Criminal History ............................................... 3

            i.    The Predicate Offense .......................................... 3

            ii.    Additional Criminal History ............................... 3

        b.    Defendant's Motion to Dismiss and the Parties' Subsequent Filings ....................................................... 4

        c.    The District Court's Dismissal Order .......................... 6

        d.    The Government's Motion to Reconsider and the Parties' Subsequent Filings .......................................... 7

        e.    The District Court's Denial of the Motion to Reconsider ..................................................................... 9

SUMMARY OF ARGUMENT ............................................................. 9

ARGUMENT ..................................................................................... 10

# TABLE OF CONTENTS, cont'd

**Page**

I.    The Standard of Review..........................................................10

II.   The Second Amendment and Felons Generally ...................11

III.  Luna is a dangerous felon and, therefore, can be
      disarmed. .............................................................................12

    a.   The facts underlying Luna's conviction
           demonstrate he is dangerous because he is
           involved with drug trafficking. ....................................13

    b.   Luna's possession of methamphetamine
           demonstrates that he is dangerous. ............................15

IV.   Luna can be disarmed because he was under indictment
      at the time he possessed the firearm..................................16

V.    Luna can be disarmed because his predicate offense was
      for a crime that would have been severely punished at
      the time of the Founding......................................................21

CONCLUSION ............................................................................26

CERTIFICATE OF SERVICE..................................................27

CERTIFICATE OF COMPLIANCE.........................................28

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...............................11

*Harmelin v. Michigan*, 501 U.S. 957 (1991) ...........................................15

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019).........................................12

*Michigan v. Summers*, 452 U.S. 692 (1981)...........................................16

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1
(2022) .............................................................................. 11, 15, 18

*State v. Buzzard*, 4 Ark. 18 (1842) ........................................................17

*United States v. Barrow*, 2025 WL 1984267 n.1 (5th Cir. July 17,
2025) (unpublished)........................................................................10

*United States v. Betancourt*, 139 F.4th 480 (5th Cir. 2025) ............. 13, 26

*United States v. Bullock*, 123 F.4th 183 (5th Cir. 2024)................... 10, 12

*United States v. Carter*, 750 F.3d 462 (4th Cir. 2014) ...........................16

*United States v. Clark*, 148 F.4th 785 (5th Cir. 2025)............................10

*United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024)................. 14, 16

*United States v. Contreras*, 125 F.4th 725 (5th Cir. 2025)......... 13, 20, 21

*United States v. Daniels*, 124 F.4th 967 (5th Cir. 2025) .......................16

*United States v. Davis*, No. 24-20258, 2025 WL 958265 (5th Cir.
Mar. 31, 2025) (unpublished)........................................................19

*United States v. Diaz*, 116 F.4th 458 ................................... 12, 21, 23, 26

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                    **Page(s)**

*United States v. Duarte,* 137 F.4th 743 (9th Cir. 2025)..........................12

*United States v. Dubois,* 139 F.4th 887 (11th Cir. 2025)........................12

*United States v. Giglio,* 126 F.4th 1039 (5th Cir. 2025)..........................20

*United States v. Greenwood,* 974 F.2d 1449 (5th Cir. 1992) ....................1

*United States v. Hunt,* 123 F.4th 697 (4th Cir. 2024) ............................12

*United States v. Jackson,* 110 F.4th 1120 (8th Cir. 2024)......................12

*United States v. Kendall,* No. 24-40441, 2025 WL 1983938 (5th Cir. July 17, 2025) (unpublished)..........................................................18

*United States v. Kimble,* 142 F.4th 308 (5th Cir. 2025) ................. *passim*

*United States v. Mancilla,* No. 23-10952, 2025 WL 2610452 (5th Cir. Sept. 10, 2025) (unpublished) .......................................................14

*United States v. Moore,* 111 F.4th 266 (3d Cir. 2024) ............................20

*United States v. Morgan,* 147 F.4th 522 (5th Cir. 2025) ................... 10, 13

*United States v. Perez-Garcia,* 96 F.4th 1166 (9th Cir. 2024)................16

*United States v. Quiroz,* 125 F.4th 713 (5th Cir. 2025)................. *passim*

*United States v. Rahimi,* 602 U.S. 680 (2024) ................................. 11, 18

*United States v. Rainey,* 757 F.3d 234 (5th Cir. 2014) ............................1

*United States v. Salerno,* 481 U.S. 739 (1987)......................................17

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                    **Page(s)**

*United States v. Schnur*, 132 F.4th 863 (5th Cir. 2025) ..................... 8, 12

*Vincent v. Bondi*, 127 F.4th 1263 (10th Cir. 2025) ................................ 12

*Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025) .......................................... 12

**Statutes and Rules**

18 U.S.C. § 922(g)(1) ............................................................................. 1, 2

18 U.S.C. § 922(n) ..................................................................................... 6

18 U.S.C. § 925(c) .................................................................................... 22

18 U.S.C. § 3231 ........................................................................................ 1

18 U.S.C. § 3731 ........................................................................................ 1

U.S. Const. amend. II .............................................................................. 11

Fed. R. App. P. 4(b)(1)(B)(i) ..................................................................... 1

Fed. R. App. P. 34(a)(2) .......................................................................... iii

5th Cir. R. 28.2.2 ........................................................................................ 1

**Other Authorities**

*Application for Relief from Disabilities Imposed by Federal Laws With Respect to the Acquisition, Receipt, Transfer, Shipment, Transportation, or Possession of Firearms*, 90 Fed. Reg. 34,394, 34,394 (July 22, 2025) .................................................. 22

# TABLE OF AUTHORITIES, cont'd

**Other Authorities**                                                       **Page(s)**

An Act for Amending the Staple of Tobacco, and for Preventing Frauds in his Majesty's Customs, ch. 4, § 68, 1764 Va. Laws 443 ....................................................................................... 23

An Act for the Punishment of Certain Crimes Against the United States, §§ 115, 1 Stat. 112, 115 (1790) ........................................... 24

An Act to Establish the Post-Office and Post Roads within the United States, § 17, 1 Stat. 232, 237 (1792) ................................. 24

Granting of Relief; Federal firearms Privileges 90 Fed. Reg. 17,835 (Apr. 29, 2025) ..................................................................... 22

Judiciary Act of 1789, ch. 20, § 33, 1 Stat. 73, 91 (enacted Sep. 24, 1789) ............................................................................................ 17

The Offences against Customs or Excise Act, 19 Geo. 2. c. 34 (1745) ................................................................................................ 23

Withdrawing the Attorney General's Delegation of Authority, 90 Fed. Reg. 13,080 (Mar. 20, 2025) ................................................ 22

4 William Blackstone, *Commentaries on the Laws of England* 89 (1769) ..................................................................................... 23, 25

6 William Waller Hening, The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619, at 130 (1819) (1748 law) ............... 24

Kellen R. Funk & Sandra G. Mayson, "Bail at the Founding," 137 *Harv. L. Rev*. 1816, 1823 (2024)................................................. 18

Stuart Banner, *The Death Penalty: An American History* 8 (2002)....... 23

## STATEMENT OF JURISDICTION

This is an appeal by the United States of a district court order dismissing the indictment in a criminal case. ROA.77-89.[1] The district court (Ramos, J.) had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3231. The United States filed a motion for reconsideration on March 11, 2025. ROA.90-103. After the court denied the motion for reconsideration by written order entered on April 10, 2025, ROA.118-23, the United States timely appealed the final dismissal ruling on May 9, 2025, under Fed. R. App. P. 4(b)(1)(B)(i). ROA.124; *see United States v. Rainey*, 757 F.3d 234, 239 (5th Cir. 2014); *United States v. Greenwood*, 974 F.2d 1449, 1466 (5th Cir. 1992). This Court has jurisdiction over the appeal pursuant to 18 U.S.C. § 3731.

## STATEMENT OF THE ISSUE

Is 18 U.S.C. § 922(g)(1) constitutional under the Second Amendment as applied to Luna?

## STATEMENT OF THE CASE

### I.    Course of the Proceeding Below

In May 2022, a car dealer reported Luna when he attempted to use

---

[1] "ROA" refers to the record on appeal, which is cited in accordance with 5th Cir. R. 28.2.2.

1

a false identification card to purchase a vehicle. ROA.45. When police encountered Luna, he was in possession of a firearm. ROA.45-46; *see also* ROA.29-30. This firearm was previously reported stolen five days prior to the instant offense. ROA.46. Luna admitted he was a felon. ROA.46. The Grand Jury for the Southern District of Texas charged Luna with unlawful possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). ROA.8-9, 144-45.

Luna filed a motion to dismiss the indictment, ROA.29-42, arguing in pertinent part, that § 922(g)(1) violates the Second Amendment as applied to him. ROA.33-38. After multiple filings from both parties, ROA.45-65, 68-70, 72-75, and a motion hearing, ROA.147-79, the district court granted the motion to dismiss and ruled that § 922(g)(1) is unconstitutional as applied to Luna. ROA.77-89.

The government then filed a motion to reconsider the dismissal order and to reinstate the indictment. ROA.90-104, 193-210. After additional filings by the parties, ROA.106-14, 116-17, 211-22, the district court denied the government's motion to reconsider. ROA.118-23. This appeal ensued. ROA.124.

## II.   Relevant Factual History

### a.   Luna's Criminal History

#### i.   The Predicate Offense

Police attempted to stop Luna because his vehicle registration was expired. ROA.209. After attempting to flee, both in the vehicle and then on foot, Luna was eventually apprehended. ROA.209-10. Police discovered a blue backpack in Luna's car containing an identification card for Luna, a clear plastic bag filled with methamphetamine, a notebook listing various weights for narcotics and corresponding prices, and notations detailing money owned based on the narcotics pricing. ROA.210. The total methamphetamine in the vehicle was more than six grams. ROA.203. Based on the police's training and experience, these items indicated that Luna was involved in the sale and distribution of narcotics. ROA.210. Luna eventually pled guilty to drug possession, was sentenced to three years' incarceration, and completed his parole approximately three months before the instant offense. ROA.191, 194-95, 197, 199-202.

#### ii.   Additional Criminal History

Prior to the instant offense, Luna was arrested in Texas (Burnet

County) for being a felon in possession of weapon (on a separate occasion) and drug possession. ROA.212-13. He was found with a firearm as well as "scales with narcotics residue, small baggies used to store and distribute narcotics," and methamphetamine. ROA.212-13. He was then released on bond. ROA.215-18. At the time of the instant offense, Luna was under a Texas state indictment for the firearm charge. ROA.220.

After the instant offense, but before being taken into federal custody, Luna was arrested and convicted in Texas state court for burglary of a habitation and burglary of a building. ROA.47, 191-92. He was sentenced to an aggregate term of 25 years' incarceration. ROA.192. Luna is currently in Texas state custody with an anticipated release date of February 7, 2033 (Texas Department of Criminal Justice, Inmate Information Search, available at: https://inmate.tdcj.texas.gov/InmateSearch/start [last accessed: October 29, 2025]).

### b. Defendant's Motion to Dismiss and the Parties' Subsequent Filings

Luna moved to dismiss the indictment, claiming it violated the Second Amendment as applied to himself. ROA.33-38. He argued possession of illicit drugs was not penalized at the time of the Founding.

ROA.37-38.

The government responded that Luna's motion to dismiss should be denied. ROA.45-65. History and tradition demonstrated the government could disarm dangerous individuals. ROA.51-60. Common sense dictated that individuals previously convicted of trafficking or possessing drugs present special dangers if armed given the link between drugs and violence. ROA.62-64. Moreover, possession of contraband and trafficking in contraband were severely punished at the time of the Founding. ROA.63. Luna's drug possession conviction is analogous to these historical crimes. ROA.63. Finally, Luna's criminal history and recidivism demonstrates that he is dangerous and can be disarmed. ROA.63-64.

The government filed a supplemental response, drawing the district court's attention to the then recently published case, *United States v. Quiroz*, 125 F.4th 713 (5th Cir. 2025). ROA.68-70. The government argued Luna's as-applied challenge should fail because he was also under indictment at the time he possessed the firearm. ROA.69-70.

Luna responded that the district court could not consider any information that was not included the indictment for the predicate

offense. ROA.73. Luna also argued that *Quiroz* holds that 18 U.S.C. § 922(n) is only constitutional when applied to defendant under indictment for a crime that would have been severely punished at the time of the Founding, such as burglary. ROA.74. Luna posited his state indictment charging felon in possession of a firearm was not such a crime. ROA.74.

The district court later held a hearing to discuss the parties' positions. ROA.149-78.

### c.    The District Court's Dismissal Order

The district court granted the motion to dismiss. ROA.77-89. It ruled that drug possession was not sufficiently analogous to possession of contraband. ROA.83-85. It acknowledged that this conclusion diverged from most district courts in the circuit when confronted with drug predicate felonies, but the district court distinguished those cases because Luna's predicate offense was for drug possession, not drug trafficking. ROA.84-85.

The district court stated that *Quiroz* was inapplicable because Luna was not charged with § 922(n), and there was no evidence regarding the conditions of Luna's bond or his knowledge of the indictment. ROA.85-86. Finally, the district court stated there was no evidence that Luna was

a dangerous felon and stated it was unclear whether a defendant's dangerousness could be considered when reviewing an as-applied challenge to § 922(g)(1). ROA.87-88.

### d.   The Government's Motion to Reconsider and the Parties' Subsequent Filings

The government then filed a motion for reconsideration of that order. ROA.90-103. It reiterated, first, that Luna can be disarmed because of his predicate offense and highlighted the overwhelming number of district court cases in the Fifth Circuit ruling that individuals convicted of drug offenses can be disarmed under § 922(g)(1). ROA.93-94.

The government argued that Luna is dangerous and should be disarmed, as evidenced by the facts giving rise to his predicate conviction. ROA.95-101. Specifically, the police report for Luna's drug possession conviction demonstrated he was involved in the sale of narcotics. ROA.99-100. The government attached the police report to the motion for reconsideration, along with other documents from that proceeding. ROA.193-210.

Finally, the government re-urged that Luna could be disarmed because he was under indictment at the time of the offense, noting that district courts can consider conduct of the offense that wasn't charged.

ROA.102-03. The government later filed supplemental exhibits related to Luna's pending Texas state indictment. ROA.211-22.

Luna replied that the motion for reconsideration was improper because the government did not rely on information that was unobtainable at the time the initial response was filed or on significant caselaw released after the district court's decision. ROA.106-08. He argued the district court should not consider facts underlying his predicate conviction beyond those necessary to sustain the elements of his drug possession conviction. ROA.108-111. Further, he argued the district court should not consider the police report from Luna's drug possession plea because it was unclear to what extent Luna stipulated the facts contained therein were true. ROA.111-14.

The government filed an advisory to the district court informing it of this Court's decision in *United States v. Schnur*, 132 F.4th 863 (5th Cir. 2025), and argued *Schnur* supported the government's position that the district court could consider the full extent of the underlying facts from Luna's predicate conviction in assessing his dangerousness. ROA.116-17.

### e.     The District Court's Denial of the Motion to Reconsider

The district court denied the motion for reconsideration. ROA.118-23. The district court would not consider the underlying facts contained in the Texas state police report because that document could have been presented in the initial opposition to the motion to dismiss. ROA.121. Finally, the district court found that *Schnur*'s dangerousness analysis turned specifically on that defendant's violent behavior. ROA.122-23.

## SUMMARY OF ARGUMENT

The district court erred by granting Luna's motion to dismiss. It erred in determining that Luna was not dangerous considering the facts of his underlying conviction. Luna did not simply possess the methamphetamine but also was trafficking that drug as evidenced by the police report. Therefore, he presents a special danger of misuse if he is allowed to possess a firearm. Moreover, his possession of methamphetamine alone demonstrates his dangerousness.

The district court erred by not considering that Luna was under indictment and on bail when he was arrested for unlawfully possessing a firearm. The district court was too narrowly focused on Luna's predicate felony conviction.

The district court also erred by rejecting the government's argument that possession of drugs is analogous to possession of contraband. In rejecting that position, the district court effectively required a historical twin for Luna's predicate offense, not an analogue.

## ARGUMENT

### I.   The Standard of Review

This Court reviews an as-applied challenge to § 922(g)(1) "*de novo.*" *United States v. Kimble*, 142 F.4th 308, 310 (5th Cir. 2025). In conducting its review, this Court "may look at the record amassed by the district court and the parties[,]" including the various party filings. *United States v. Clark*, 148 F.4th 785, 790 (5th Cir. 2025) (cleaned up).

"Because the Second Amendment analysis is a legal inquiry into the text and history related to the relevant regulation, the government may provide additional legal support for its arguments on appeal." *United States v. Morgan*, 147 F.4th 522, 531 (5th Cir. 2025) (quoting *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024)). Put simply, "in the context of as-applied challenges to § 922(g)(1)," this Court has "adopted a more lenient" pleading standard. *United States v. Barrow*, No. 24-10155, 2025 WL 1984267, at *2 n.1 (5th Cir. July 17, 2025) (unpublished).

10

## II.    The Second Amendment and Felons Generally

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Although the Second Amendment "conferred an individual right to keep and bear arms," *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), the right "is not unlimited" and it remains subject to "lawful regulatory measures." *Id.* at 626, 627 n.26.

A modern firearm regulation is assessed by first asking whether the Second Amendment's plain text covers the proscribed conduct. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). If it does, the Government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*; *see also United States v. Rahimi*, 602 U.S. 680 (2024).

Section 922(g)(1) prohibits the possession of firearms by felons. This Court has ruled that § 922(g)(1) does not violate the Second Amendment

11

on its face but may be unconstitutional as applied to certain felons. *United States v. Diaz*, 116 F.4th 458, 472 n.4.[2]

## III.   Luna is a dangerous felon and, therefore, can be disarmed.

"The Second Amendment allows Congress to disarm classes of people it reasonably deems dangerous." *Kimble*, 142 F.4th at 314-15. A review of the "historical record demonstrates that legislatures have the power to prohibit dangerous people from possessing guns." *Bullock*, 123 F.4th at 185 (quotations omitted) (citing *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting)); *see Schnur*, 132 F.4th at 868-70. Indeed, preventing dangerous individuals from possessing firearms is not only consistent with history, but is also "consistent with common sense." *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting).

---

[2] The government maintains this Court, in *Diaz*, adopted a narrower approach to the historical analysis than is appropriate under *Bruen* and *Rahimi*. Felons may be categorically disarmed consistent with our Nation's historical tradition of firearm regulation at *Bruen*'s Second Step, and, therefore, § 922(g)(1) is not suspectable to as-applied Second Amendment challenges. *See United States v. Hunt*, 123 F.4th 697, 705-08 (4th Cir. 2024); *United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024); *Vincent v. Bondi*, 127 F.4th 1263 (10th Cir. 2025); *United States v. Dubois*, 139 F.4th 887 (11th Cir. 2025); *United States v. Duarte*, 137 F.4th 743 (9th Cir. 2025); *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025). The government recognizes this Court has rejected the argument that a defendant's status as felon is alone sufficient to justify disarmament and raises it solely for purposes of preservation.

> **a.** **The facts underlying Luna's conviction demonstrate he is dangerous because he is involved with drug trafficking.**

In determining whether a defendant may be disarmed, this Court may consider the "conduct underlying the predicate offense." *Morgan*, 147 F.4th at 528 (citing *United States v. Contreras*, 125 F.4th 725, 730, 732–33 (5th Cir. 2025); *United States v. Betancourt*, 139 F.4th 480, 484 (5th Cir. 2025)). Here, the conduct underneath Luna's predicate conviction demonstrates that he can be disarmed.

After Luna attempted to flee from them, police discovered a blue backpack in Luna's car containing an identification card for Luna, a clear plastic bag filled with methamphetamine, a notebook listing various weights for narcotics and corresponding prices, and notations detailing money owed based on the narcotics pricing. ROA.209-10. The total methamphetamine in the vehicle was more than six grams, which indicated that Luna was involved in the sale and distribution of narcotics. ROA.203, 210. Importantly, Luna agreed the police report, as well as the laboratory report, were "true and correct" and these files represented "the Statement of Facts" for his plea. ROA.199-201.

While Luna ultimately pled to possession of a controlled substance,[3] the facts underlying his conviction demonstrate that he was involved in drug trafficking. This Court has recognized "the intrinsic violence of the drug trade." *Kimble*, 142 F.4th at 312 (holding § 922(g)(1) constitutional as applied to a drug trafficker because his prior conviction confirms he is the sort of dangerous individual that legislatures have long disarmed); *United States v. Mancilla*, No. 23-10952, 2025 WL 2610452, at *2 (5th Cir. Sept. 10, 2025). Because Founding-era governments disarmed dangerous persons as a class, disarming "drug dealers under (g)(1) makes sense because their past crimes were inherently dangerous." *Kimble*, 142 F.4th at 317 (quotation omitted). Luna's involvement in the inherently dangerous drug trade necessarily "predisposes [him] to armed conflict." *See United States v. Connelly*, 117 F.4th 269, 279 (5th Cir. 2024) Therefore, given Luna's conduct underlying his predicate conviction, § 922(g)(1) is constitutional as applied to him.

---

[3] The district court acknowledged that Luna "was charged as manufactured delivery but pled down to straight possession." ROA.150.

14

**b.    Luna's possession of methamphetamine demonstrates that he is dangerous.**

Even if this Court were not to consider Luna's role as a drug trafficker, his simple possession of methamphetamine indicates he is dangerous and can be disarmed. Both drug users and drug dealers have a demonstrated propensity to violate the criminal law. Simple possession of a controlled substance is a crime. Thus, regardless of an individual's intent in possessing a controlled substance (whether for consumption or for sale), they pose a greater danger of misusing firearms than do "ordinary, law-abiding citizens." *Bruen*, 597 U.S. at 9.

Moreover, drug users pose a further danger of misusing firearms because of potential "drug-induced changes in physiological functions, cognitive ability, and mood." *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part and concurring in the judgment). Those involved in the drug trade often "commit crime in order to obtain money to buy drugs"—and thus, pose a danger of using firearms to facilitate such crime. *Id.* In addition, "violent crime may occur as part of the drug business or culture." *Id.* Finally, armed drug users and drug dealers endanger the police. "[D]ue to the illegal nature of their activities, drug users and addicts would be more likely than other citizens to have

15

hostile run-ins with law enforcement officers," and such encounters "threaten the safety" of the officers, especially "when guns are involved." *United States v. Carter*, 750 F.3d 462, 469 (4th Cir. 2014) (citation omitted); *see Michigan v. Summers*, 452 U.S. 692, 702 (1981) ("[T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence.").

Therefore, Luna's possession of methamphetamine demonstrates that he is dangerous and should be disarmed. While this Court has said that users of marijuana may not necessarily be dangerous, *See Connelly*, 117 F.4th at 279; *United States v. Daniels*, 124 F.4th 967, 979 (5th Cir. 2025), that holding does not mean that those who possess methamphetamine (whether to sell or to use) are not dangerous. Thus, § 922(g)(1) is constitutional as applied to Luna.

## IV. Luna can be disarmed because he was under indictment at the time he possessed the firearm.

"[T]he historical record evinces a historical tradition of complete disarmament of criminal defendants facing serious or felony charges pending trial." *United States v. Perez-Garcia*, 96 F.4th 1166, 1184 (9th Cir. 2024). As one mid-19th-century jurist noted, "[p]ersons accused of crime, upon their arrest, have constantly been divested of their arms,

16

without the legality of the act having ever been questioned." *State v. Buzzard*, 4 Ark. 18, 21 (1842) (opinion of Ringo, C.J.). Indeed, the Constitution generally permits "substantial liberty restrictions" on defendants pending trial. *United States v. Salerno*, 481 U.S. 739, 749 (1987).

At the Founding, the most obvious means of disarmament was "pretrial detention," used as "a temporary restriction on the constitutional rights of those who posed a threat to society but had not been proven guilty." *Quiroz*, 125 F.4th at 719. "[F]ounding-era defendants were rarely released pretrial after indictment for a capital crime," including for "many modern-day felonies." *Id.* at 720, 721. Federal law required a heightened showing for bail in capital cases, *see* Judiciary Act of 1789, ch. 20, § 33, 1 Stat. 73, 91 (enacted Sep. 24, 1789), and "courts typically denied bail after grand jury indictment," as Chief Justice Marshall did at Aaron Burr's trial for treason. *Quiroz*, 125 F.4th at 721.

Further, "even when criminal defendants were charged with bailable offenses, founding-era magistrates could require those defendants suspected of future misbehavior to post a surety bond before their release." *Id.* at 722. Founding-era surety laws "authorized

17

magistrates to require individuals suspected of future misbehavior to post a bond," and were used to restrict the carrying of arms. *Rahimi*, 602 U.S. at 695. Surety laws were applied to defendants pending trial as part of Founding-era bail restrictions. *Quiroz*, 125 F.4th at 722 (citing Kellen R. Funk & Sandra G. Mayson, "Bail at the Founding," 137 *Harv. L. Rev.* 1816, 1823 (2024)).

Section 922(g)(1) is therefore "consistent with this Nation's historical tradition of firearm regulation" as applied to defendants pending trial on serious or felony charges, such as Luna at the time of his federal offense. *See Bruen*, 597 U.S. at 17. Section 922(g)(1) "is by no means identical to these founding era regimes, but it does not need to be" because *Bruen's* second step does not require "a 'dead ringer' or a 'historical twin.'" *Rahimi*, 602 U.S. at 692, 698 (quoting *Bruen*, 597 U.S. at 30 (emphasis deleted)). At the very least, tradition supports disarming a defendant who (like Luna) was awaiting trial on felony *firearm* charges. ROA.215-20. This is a reason to suspect a particular defendant of "future misbehavior" involving firearms. *Quiroz*, 125 F.4th at 722; *cf. Bruen*, 597 U.S. at 63 (noting Reconstruction-era evidence that a firearms conviction could be grounds for disarmament); *United States v. Kendall*, No. 24-

40441, 2025 WL 1983938 (5th Cir. July 17, 2025) (unpublished) (denying as-applied Second Amendment challenge to § 922(g)(1) for defendant convicted of, *inter alia*, unlawful possession of a firearm); *United States v. Davis*, No. 24-20258, 2025 WL 958265 (5th Cir. Mar. 31, 2025) (unpublished) (same).

In fact, Luna was on bail for possessing a firearm while also possessing "scales with narcotics residue, small baggies used to store and distribute narcotics," and a small amount methamphetamine. ROA.212-13. Given that he appeared to possess a firearm while distributing narcotics, Luna was on bond for an "inherently dangerous" felony and should be disarmed. *See Kimble*, 142 F.4th at 317.

This Court has found that historical tradition supports other statutes disarming defendants pending trial. *Quiroz*, 125 F.4th at 718-25. In *Quiroz*, this Court upheld § 922(n), which prohibits any person under felony indictment from shipping or transporting a firearm in interstate commerce or receiving a firearm that has moved in interstate commerce. *Quiroz*, 125 F.4th at 722. Section 922(n) is relevantly similar to the Founding-era tradition of pretrial detention because "both serve to prevent dangerous activities by indictees" by restricting their access to

19

arms. *Id.* at 724. Notably, historical pretrial detention (like § 922(g)(1) as applied here) prevented "the mere possession of firearms" by charged defendants. *Id.* at 719. Thus, although § 922(g)(1) is broader than § 922(n), which "restricts only shipping, transporting, and receiving firearms," *id.*, both statutes are supported by historical tradition when applied to individuals on bond pending felony charges.

That Luna is charged with § 922(g)(1) and not § 922(n) does not undermine the fact that Luna can be disarmed while under pending indictment. When reviewing an as-applied challenge, this Court should consider "the circumstances of a criminal offense…regardless of whether they were charged." *United States v. Moore*, 111 F.4th 266, 272-73 (3d Cir. 2024) (rejecting the defendant's argument that a court "may consider only the facts alleged in the indictment" when deciding an as-applied challenge to § 922(g)(1)). Indeed, this Court has repeatedly rejected as-applied challenges to § 922(g)(1) by those on supervised release, parole, or probation based on the history and tradition of disarming individuals serving criminal sentences, even though a defendant's release status is not an element of § 922(g)(1). *E.g., United States v. Giglio*, 126 F.4th 1039, 1042-46 (5th Cir. 2025); *Contreras*, 125 F.4th at 732-33. Since

history and tradition confirm that Luna can be disarmed while pending

indictment, the district court should have denied his as-applied challenge

to § 922(g)(1). *See Quiroz*, 125 F.4th at 718.

**V.    Luna can be disarmed because his predicate offense was for a crime that would have been severely punished at the time of the Founding.**

This Court has also held the government may also defeat an as-

applied challenge to § 922(g)(1) by demonstrating the defendant has a

predicate felony conviction for an offense that 1) is analogous to a

founding-era felony and 2) the founding-era felony carried a severe

punishment comparable to § 922(g)(1). *Diaz*, 116 F.4th at 467; *Contreras*,

125 F.4th at 731 (explaining that *Diaz* requires a showing "that someone

convicted of an analogous felony was punished in a comparable way").

At least two forms of founding-era punishments are comparable to

the punishment imposed by § 922(g)(1): the death penalty and estate

fortfeiture. *Diaz*, 116 F.4th at 467. Both are "relevantly similar" to §

922(g)(1) since each was enacted "to deter violence and lawlessness" and

"achieved their goals by permanently punishing offenders." *Id.* at 469.

"Capital punishment is obviously permanent," and many estate forfeiture

laws "did not provide an opportunity for offenders to regain their

possessions." *Id.* at 469. Therefore, the "lesser restriction of permanent disarmament[4] that § 922(g)(1) imposes" does not violate the Second Amendment when applied to a defendant who, at the time of the founding, would have faced the death penalty or estate fortfieture for his prior criminal convictions. *See Id.* at 469.

In *Diaz*, this Court specifically identified historical laws that imposed the death penalty and estate fortfieture for theft. *Id.* at 468-69. Those laws "establish that our country has a historical tradition of severely punishing people like Diaz who have been convicted of theft." *Id.*

---

[4] Notably, the government recently re-established 18 U.S.C. § 925(c), an administrative process through which convicted felons can regain the right to possess firearms. Under 18 U.S.C. § 925(c), a person who is disqualified from possessing firearms, including a person disqualified under § 922(g)(1), "may make application to the Attorney General for relief from the disabilities." *Id.* "[T]he Attorney General may grant such relief" if the applicant shows that "the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to public interest." *Id.* A person whose application is denied may seek judicial review in federal district court. *See Id.*

The Attorney General recently issued an interim final rule withdrawing the delegation of authority to ATF to administer § 925(c). *See* Withdrawing the Attorney General's Delegation of Authority, 90 Fed. Reg. 13,080 (Mar. 20, 2025). Soon after, the Attorney General granted relief under § 925(c) to ten individuals. *See* Granting of Relief; Federal firearms Privileges 90 Fed. Reg. 17,835 (Apr. 29, 2025). The Department also has issued a notice of proposed rulemaking to establish "criteria to guide determinations for granting relief." *Application for Relief from Disabilities Imposed by Federal Laws With Respect to the Acquisition, Receipt, Transfer, Shipment, Transportation, or Possession of Firearms*, 90 Fed. Reg. 34,394, 34,394 (July 22, 2025).

at 468-69. Therefore, § 922(g)(1) was not unconstitutional as applied to him. *Id.* at 471.

At common law, "all forcible acts of smuggling, carried on in defiance of the laws, or even in disguise to evade them" were punishable by death. 4 William Blackstone, *Commentaries on the Laws of England* 89 (1769). English regulations during the colonial period punished with death the smuggling of goods into the colonies. *See* The Offences against Customs or Excise Act, 19 Geo. 2. c. 34 (1745). Similarly, in the Founding era, "Virginia imposed the death penalty for all sorts of crimes relating to the tobacco trade—including embezzling tobacco, fraudulently delivering tobacco, altering inspected tobacco, forging inspectors' stamps, and smuggling tobacco." Stuart Banner, *The Death Penalty: An American History* 8 (2002); *See* An Act for Amending the Staple of Tobacco, and for Preventing Frauds in his Majesty's Customs, ch. 4, § 68, 1764 Va. Laws 443. Taken together, these laws establish a historical tradition of severely punishing people convicted of crimes involving the possession or distribution of illicit goods. Like § 922(g)(1), they severely and indefinitely punished knowing participants in illicit marketplaces to deter crime and protect society from lawlessness. *See Diaz*, 116 F.4th at

468-69. And the punishment imposed subsumed disarmament rendering the means to achieve these goals "relevantly similar" to § 922(g)(1).

Like the laws strictly controlling the tobacco trade, Founding-era laws harshly punishing those who trafficked in stolen goods further supports the government's ability to disarm Luna. Specifically, the government invokes Founding-era laws punishing the knowing receipt of a stolen horse with death, *see* 6 William Waller Hening, The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619, at 130 (1819) (1748 law), as well as laws that punished the trafficking of contraband with death. *See* An Act to Establish the Post-Office and Post Roads within the United States, § 17, 1 Stat. 232, 237 (1792) (punishing mail theft with the death penalty); An Act for the Punishment of Certain Crimes Against the United States, §§ 115, 1 Stat. 112, 115 (1790) (punishing with death the making or trading of counterfeit or forged securities).

The government acknowledges that this Court rejected its reliance on those laws in *Kimble*. *See* 142 F.4th at 314. But *Kimble* did not grapple with the government's reliance on the history of strict regulation concerning the tobacco trade because the government did not raise that

24

issue until oral argument. *See id.* at 313 n.8. Historical laws harshly punishing participation in the marketplace of stolen and counterfeit goods, taken together with the historical laws strictly controlling the tobacco trade, are sufficient to defeat Luna's as-applied Second Amendment challenge.

Indeed, it is difficult to imagine how this Nation's history and tradition could be offended by disarming those involved in the illicit drug trade. The modern drug trade has a more obvious tie-in to violence and social disorder than many of the Founding-era capital crimes worthy of the death penalty, including the simple theft laws at issue in *Diaz*. And like the "going armed" laws discussed in *Rahimi* and *Diaz*, felony drug statutes seek to diffuse the risk of violence that so often accompanies drug crimes. That Founding-era legislatures commonly punished possession or distribution of illicit goods shows that, from the Founding-era onward, legislatures aimed to curb illegal marketplaces. 4 William Blackstone, *Commentaries on the Laws of England* 89 (1769).

As such, the underlying principles of these statutes justify disarming those convicted of the possession of a controlled substance like methamphetamine. This Court has emphasized that "[t]he Supreme

25

Court made clear in *Rahimi* that *Bruen* was not meant to suggest a law trapped in amber." *Betancourt*, 139 F.4th at 484 (rejecting defendant's as-applied challenge to § 922(g)(1)) (cleaned up). Therefore, Luna's disarmament under § 922(g)(1) is justified because his predicate conviction is akin to a crime that was severely punished at the time of the Founding. *See Diaz*, 116 F.4th at 471.

## **CONCLUSION**

This Court should reverse the district court's dismissal order and remand for the reinstatement of the indictment.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

s/ *Kristian D. Amundsen*
KRISTIAN D. AMUNDSEN
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9102
Fax: (713) 718-3302

ATTORNEYS FOR APPELLANT

26

## CERTIFICATE OF SERVICE

I, Kristian D. Amundsen, Assistant United States Attorney, hereby certify that on October 31, 2025, an electronic copy of the Appellant's Brief was served by notice of electronic filing via this court's CM/ECF system upon opposing counsel, Assistant Federal Public Defender Kathryn Shephard.

Upon notification that the electronically filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be placed in the United States Mail, postage prepaid, addressed to the Clerk. *See* 5th Cir. R. 25.2.1, 31.1; 5th Cir. ECF filing standard E(1).

s/ *Kristian D. Amundsen*
KRISTIAN D. AMUNDSEN
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains approximately 5,004 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Century Schoolbook font, 14 point font for text and 12 point font for footnotes.

3.  This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because this brief has been redacted of any personal data identifiers.

4.  This brief complies with the electronic submission of 5th Cir. R. 25.2.1, because this is brief is an exact copy of the paper document.

5.  This brief is free of viruses because this brief has been scanned for viruses with the most recent version of the McAfee Endpoint Security scanning program.

s/ *Kristian D. Amundsen*
KRISTIAN D. AMUNDSEN
Assistant United States Attorney
Date: October 31, 2025

28